**FILED**

**September 23, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 8:03 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | |
|---|---|
| Douglas A. Buckner,      Employee, | )    Docket No.: 2016-01-0303 |
| v. | )    State File No.: 70600-2015 |
| Eaton Corporation,      Employer, | )    Judge Thomas Wyatt |
| And | ) |
| Old Republic Ins. Co.,      Carrier. | ) |

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

This case came before the undersigned Workers' Compensation Judge on September 15, 2016, upon the Request for Expedited Hearing filed by the employee, Douglas A. Buckner, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central focus of the hearing concerned whether Mr. Buckner submitted sufficient evidence to establish he is likely to prevail at a hearing on the merits in establishing he complied with the notice requirements found in Tennessee Code Annotated section 50-6-201 (2016). The employer, Eaton Corporation (Eaton), also contended Mr. Buckner did not come forward with sufficient expert medical evidence to establish that his spinal injury arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court finds Mr. Buckner is entitled to the benefits he seeks.[1]

### History of Claim

Mr. Buckner is a fifty-year-old resident of Cleveland, Bradley County, Tennessee. (T.R. 1 at 1.) He worked as a press operator at Eaton for approximately fourteen months when he allegedly sustained the July 20, 2015 injury that forms the basis of this claim. *Id.*

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

Mr. Buckner testified he had not experienced back pain or numbness in his legs prior to July 20, 2015. On that date, Eaton scheduled him to work on its second shift. At approximately 9:00 p.m., Mr. Buckner and a co-worker lifted a part weighing forty pounds onto his press. Mr. Buckner then walked to the back of his press to adjust the back gauges. Because the gauges were "stuck," Mr. Buckner had to lean and push hard with both hands to make the necessary adjustment. While doing so, he felt a "pinch" in his low back.

Mr. Buckner testified he sensed a dull ache in his back as he worked the rest of his shift and felt more tired than usual at its completion. After his shift ended at 2:00 a.m., he went home, watched television until 5:00 a.m., and then went to bed. He awoke at approximately noon, but could not stand up due to back pain at the same location where he felt the pinch in his back the night before. He stated he needed the assistance of a neighbor to walk to the shower.

Mr. Buckner testified he remained "stove up" when he arrived at work on July 21, 2015. He stated he could only walk in "baby steps." Approximately ten minutes into the shift, he told his supervisor, Tony Edwards, "I got hurt last night."[2] According to Mr. Buckner, Mr. Edwards told him he needed to go to the doctor and took him to talk to Candace Hansen in Eaton's human resources department.[3]

Mr. Buckner testified he told Ms. Hansen he was in pain and wanted to go home. Both he and Ms. Hansen testified that Ms. Hansen asked Mr. Buckner how he got hurt, to which he responded that he did not know. Ms. Hansen testified during the Expedited Hearing that she specifically asked Mr. Buckner if he got hurt at Eaton, to which Mr. Buckner stated he was not sure what happened. She stated she also asked Mr. Buckner if anything unusual happened the day before and Mr. Buckner stated "no." However, Ms. Hansen testified she had a vague memory of Mr. Buckner mentioning something about pushing heavy carts the day before.

Michael Patterson, Eaton's Human Resources Manager, testified that, per Eaton policy, Mr. Buckner filed a "near miss" report by email on July 21, 2015. The Court asked Mr. Patterson to submit Mr. Buckner's email as a late-filed exhibit. He did so. In the email, Mr. Buckner wrote, "went home last night at end of shift with no problems woke up this morning with lower back pain. not sure what caused it. reported issue to supervisor at start of shift." (Ex. 9 at 1.)

---

[2] Mr. Buckner testified he assumed Mr. Edwards knew he was reporting a possible work injury because Mr. Edwards knew the only thing Mr. Buckner had done the night before was work at Eaton.

[3] Mr. Edwards testified he asked Mr. Buckner if he got hurt at Eaton the night before and Mr. Buckner told him he did not know.

Mr. Buckner went home after speaking to Ms. Hansen. He testified that he did not seek medical care at that time because he thought he had pulled a muscle and assumed the pain would go away. Mr. Buckner attended a long-standing appointment with a marriage counselor in Chattanooga on July 22, 2015. He testified a neighbor had to drive him to the appointment.

Mr. Buckner saw Dr. Gerard Mazza, his general practitioner, on July 23, 2016, for treatment of low back pain. (Ex. 1 at 1.) Dr. Mazza noted Mr. Buckner awoke with pain and denied that trauma or injury accounted for his back pain. Dr. Mazza's note indicates Mr. Buckner reported that he worked as a press operator. *Id.* He treated Mr. Buckner with an injection and a prescription for pain medication and took him off work. *Id.*

Mr. Buckner testified he took Dr. Mazza's off-work note to Ms. Hansen, who told him he would need to go under FMLA "to save his job." Mr. Buckner testified Ms. Hansen gave him the number of an adjuster at Sedgwick Claims Management Services (Sedgwick) to call about going under FMLA.[4]

Mr. Buckner testified he stayed out of work two weeks and basically stayed "on the couch the entire time." At the conclusion of this period, Mr. Buckner's symptoms had abated sufficiently that he could return to work. However, he quickly began experiencing steadily-worsening low back and leg symptoms as he continued to work. Mr. Buckner sought chiropractic care, but on the second visit, was in too much pain to lie down on the examination table. The chiropractor's office arranged an immediate appointment with Dr. Mazza, whom Mr. Buckner saw on August 21, 2016. (Ex. 1 at 2.)

During the August 21, 2016, appointment, Mr. Buckner reported he developed right-sided pain that extended down his leg. (Ex. 1 at 2.) Dr. Mazza referred Mr. Buckner for an MRI to assess whether he had nerve root compression in his spine. *Id.* Mr. Buckner underwent the MRI at Cleveland Imaging on August 26, 2015, which revealed a herniated disc at the L5-S1 level of his lumbar spine. (Ex. 1 at 3; Ex. 2.) The following day, Dr. Mazza placed various restrictions on Mr. Buckner's work activities, ranging, at different times, from no work at all to no work requiring lifting, climbing stairs or long hours standing. (Ex. 1 at 3-5, 7-10.)[5] Dr. Mazza referred Mr. Buckner to orthopedic surgeon Dr. Scott Hodges for treatment of his spinal condition. *Id.* at 2.

Dr. Hodges diagnosed a lumbar disc prolapse with radiculopathy. (Ex. 3 at 2.)

---

[4] Mr. Patterson testified Sedgwick handles Eaton's self-insured workers' compensation and short-term disability programs.

[5] Mr. Buckner received short-term disability benefits from Eaton from August 20, 2015, until January 31, 2016. (Ex. 6 at 1.)

3

On November 2, 2015, he performed a right L5-S1 microdiskectomy at Memorial Hospital in Chattanooga, Tennessee. Post-surgically, Dr. Hodges diagnosed Mr. Buckner with a right-sided herniated nucleus pulposus at the L5-S1 level. *Id.* at 4-5. He restricted Mr. Buckner's work activities for several weeks following surgery, returning him to regular duty on January 21, 2016.[6] *Id.* at 8, 12, 15, 20.

During the Expedited Hearing, Mr. Buckner testified he assumed that his supervisor, Mr. Edwards, knew he meant he was possibly hurt at work when Mr. Buckner reported getting hurt the night before. He stated he felt the handling of his claim as a workers' compensation claim "was in Tony's court." On September 2, 2016, Mr. Buckner met with Mr. Patterson to discuss the handling of his claim under workers' compensation. Mr. Patterson asked Mr. Buckner to complete a written statement for submission to Sedgwick. (Ex. 4 at 2.) Mr. Buckner wrote on the report he injured his low back on July 20, 2015, while adjusting the back gauges of his press at Eaton. He also wrote, "[t]here was no significant pain until the early morning hours after I left work." *Id.* Sedgwick denied Mr. Buckner's claim.

### Findings of Fact and Conclusions of Law

#### *Applicable Legal Standard*

Mr. Buckner bears the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Because this claim is in the posture of an Expedited Hearing, Mr. Buckner need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

#### *Notice*

The Court first considers if Mr. Buckner came forward with sufficient evidence to establish he provided Eaton timely notice of his injury. The Workers' Compensation Law imposes the following notice requirement on employees seeking workers' compensation benefits: "[e]very injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury." Tenn. Code Ann. § 50-6-201(a)(1) (2015). The notice statute additionally provides that

---

[6] Dr. Hodges determined Mr. Buckner achieved maximum medical improvement from his lumbar surgery on December 31, 2015. (Ex. 3 at 20.)

"[n]o compensation shall be payable . . . unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." *Id.*

In assessing whether the information Mr. Buckner gave Eaton on July 21, 2015, satisfied his statutory obligation to give notice, the Court is mindful that Tennessee Code Annotated section 50-6-201(a)(2) (2015) requires compliant notice include a statement "in plain and simple language [setting forth] the time, place, nature, and cause of the accident resulting in injury[.]" Mr. Buckner told Eaton on three separate occasions on July 21, 2015, that he did not know how he hurt his back. Accordingly, the Court finds no merit in Mr. Buckner's argument that he gave the requisite notice by telling his supervisor, Mr. Edwards, on July 21, 2015, that he "was injured last night."

Mr. Buckner's statements that he did not know how he hurt his back on July 20, 2016, negate any reasonable inference that Mr. Edwards should have understood that Mr. Buckner was giving notice of a work injury because he knew Mr. Buckner worked at Eaton the previous night. In view of the totality of the evidence introduced during the Expedited Hearing, the Court finds Mr. Buckner is unlikely to prevail at a hearing on the merits in establishing that the information he provided Eaton on July 21, 2015, satisfied his obligation to give Eaton notice he claimed he hurt his back at work the previous night.

Having determined Mr. Buckner did not provide Eaton sufficient notice on July 21, 2015, the Court next considers whether the notice Mr. Buckner provided on September 2, 2015, satisfied his statutory obligation. Eaton contends it did not because, by July 21, 2015, Mr. Buckner knew he sustained a back injury at work the previous evening. Eaton asserts that the notice it received from Mr. Buckner on September 2, 2105, did not invoke its obligation to pay workers' compensation benefits because the notice occurred more than thirty days after the date of injury.

The Court agrees that the evidence introduced at the Expedited Hearing indicates Mr. Buckner knew by the morning of July 21, 2015, that he suffered from low back and leg pain. However, the evidence also indicates that Mr. Buckner did not then know whether his pain emanated from a workplace injury. On July 21, 2015, he told both his supervisor and an Eaton human resources representative that he did not know how he hurt his back. The email Mr. Buckner sent Eaton on July 21, 2015, provides context to his indecision, in that it states : "went home last night at end of shift with no problems woke up this morning with lower back pain." (Ex. 9.) In view of the above evidence, the Court finds that, at a hearing on the merits, Mr. Buckner will likely prevail in establishing that, on July 21, 2016, he did not know that his back pain related to his work at Eaton.

In further support of the above finding, the Court concludes Mr. Buckner did not immediately know the full nature and seriousness of his injury. Mr. Buckner testified

5

that he did not go to the doctor on July 21, 2015, because he thought he had a pulled muscle and the pain would eventually resolve. The Court finds Mr. Buckner's thought process was reasonable in that, two days after the pain began, Dr. Mazza diagnosed a lumbar strain. (Ex. 1 at 1.) Additionally, after two weeks off work, Mr. Buckner's symptoms improved sufficiently to allow him to return to work at Eaton. He worked approximately three weeks until he returned to Dr. Mazza on August 21, 2015, with increasingly worsening pain. Dr. Mazza again took him off work on this date, this time diagnosing him with a suspected herniated lumbar disc. (Ex. 1 at 2; Ex. 6 at 1.) In consideration of the above evidence, the Court finds that, at a hearing on the merits, Mr. Buckner will likely prevail in showing that he did not know he had a serious spinal injury that could result in surgery until, at the very earliest, his second visit with Dr. Mazza on August 21, 2015.[7]

In *Maples v. Federal-Mogul Corporation*, No. 2015-04-0039, 2016 TN Wrk. Comp. App. Bd. LEXIS 8, at *19-20 (Tenn. Workers' Comp. App. Bd. Feb. 17, 2016), the Workers' Compensation Appeals Board held an employee's lack of knowledge of the work-relatedness and nature and seriousness of her injury constituted a valid excuse for her failure to provide notice within the statutory period. Although the injury before the Court in *Maples* was a cumulative trauma injury, the Court sees no barrier to applying the principles set forth in *Maples* to a case involving a one-time injurious incident such as that claimed by Mr. Buckner. Tennessee Code Annotated section 50-6-201(a)(1) (2015) does not distinguish between one-time injuries and gradual injuries in providing that a workers' compensation judge can award benefits even when the employee gives notice after the statutory period if the judge finds the employee had "a reasonable excuse for failure to give the notice."

In view of the evidence introduced at the Expedited Hearing, the Court finds that Mr. Buckner will likely prevail on the merits in showing he had a reasonable excuse for failing to give Eaton notice until, on August 21, 2015, Dr. Mazza took him off work for the second time, sent him for an MRI, and referred him to an orthopedic surgeon for his back and leg symptoms. Accordingly, the Court finds the notice Mr. Buckner provided Eaton on September 4, 2015, satisfied his obligation under section 50-6-201 because it occurred within thirty days after August 21, 2015.

*Causation*

In addition to its notice defense, Eaton contends Mr. Buckner did not come forward with sufficient expert medical evidence to establish his spinal injury is work-

---

[7] Arguably, the date Mr. Buckner sufficiently understood the nature and seriousness of his injury occurred later than August 21, 2015. Mr. Buckner would not have known for certain that he had a herniated disc until he underwent an MRI on August 26, 2015. (Ex. 2 at 1.) He would not have known he needed surgery to repair the disc until he presented at Dr. Hodges' office on October 20, 2015. (Ex. 3 at 1.)

6

related. Mr. Buckner relies on causation opinions by Drs. Mazza and Hodges, which he claims effectively establish the work-relatedness of his injury. Eaton contends the causation opinions of Drs. Mazza and Hodges are inadmissible because Mr. Buckner failed to establish that the doctors considered accurate historical information in formulating their causation opinions. Accordingly, Eaton contends Mr. Buckner's claim fails for lack of the requisite expert medical opinion of causation.

In support of its position, Eaton argues Mr. Buckner gave five different accounts at different times describing how his alleged injury occurred:

- In addition to his in-court account of the injury, he initially told Eaton management he did not know how he was hurt.
- According to Dr. Mazza's causation opinion, he told Dr. Mazza he got hurt when "he and a co-worker were working on a piece of equipment when he had to reach and reposition a gauge." (Ex. 1 at 11.)
- In the report he filed with Eaton on September 2, 2016, "I went behind the machine in the guarding to adjust the back gages [sic]." (Ex. 4 at 2.)
- In his affidavit, he stated, "I was moving some heavy items at work and felt pain in my back."[8] (T. R. 4 at 1.)

Eaton urges the Court to find that because Mr. Buckner gave so many different accounts of his injury, the Court cannot sufficiently trust the information on which Drs. Mazza and Hodges relied to formulate their opinions.

The 2013 Workers' Compensation Reform Act requires that the injury for which an employee seeks benefits arise "primarily" out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2015). An injury arises primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2015). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2015). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014).[9]

---

[8] In cross-examination during the Expedited Hearing, Mr. Buckner explained the "heavy items" he referred to in his affidavit were the parts he lifted onto his press.

[9] The Court paraphrased the statutory analysis contained in this paragraph from the opinion of the Workers' Compensation Appeals Board in *Willis v. All Staff*, No. 2014-01-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *15-16 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015.)

In *Poellnitz v. Resolute Forest Products*, No. 2016-01-0135, 2016 TN Wrk. Comp. App. Bd. 33, at *17 (Tenn. Workers' Comp. App. Bd. Aug. 16, 2016), the Workers' Compensation Appeals Board, quoting the Supreme Court's opinion in *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, at 676 (Tenn. 1991), held that, in assessing expert medical opinion submitted as evidence, a workers' compensation judge "is allowed . . . to consider the qualifications of the experts, the circumstances of their examinations, [and] the information available to them[.]" Had Mr. Buckner simply relied on Dr. Hodges' causation opinion, the Court might have found he failed to satisfy his burden of proof on causation. Dr. Hodges communicated his causation opinion via a handwritten response to an inquiry contained in a letter sent him by Mr. Buckner's attorney. He qualifies his opinion that Mr. Buckner's injury was work-related by the words "per history." (Ex. 3 at 17.) The causation letter to which he responded does not communicate a history for Dr. Hodges to consider, and the only history of injury in Dr. Hodges' records is a note in the initial visit report indicating Mr. Buckner "had a work injury in July of 2014 . . . He 'pulled a muscle.'" (Ex. 3 at 1.) While the Court finds Dr. Hodges' opinion is admissible, the Court places little weight on it because it does not detail the information he reviewed to form his opinion.

On the other hand, Dr. Mazza based his opinion that Mr. Buckner's injury was work-related on the following history:

> Mr. Buckner . . . and a co-worker were working on a piece of equipment when he had to reach and reposition a gauge. At that point he felt a pinching sensation in his mid lower back that radiated to his leg. At this time he disregarded the symptoms. The next morning when on awakening his symptoms were significantly worse.

(Ex. 1 at 11.) This history is consistent with Mr. Buckner's in-person testimony. In consideration of Dr. Mazza's opinion and the fact Dr. Mazza based it on a history closely resembling Mr. Buckner's credible testimony,[10] the Court finds that, at a hearing on the merits, Mr. Buckner will likely prevail in establishing his spinal injury arose primarily out of and in the course and scope of employment.

*Temporary Disability Benefits*

Having determined that Mr. Buckner will likely prevail at a hearing on the merits in establishing that he suffered a compensable spinal injury at Eaton on July 20, 2016, the

---

[10] The Court does not dilute the credibility of Mr. Buckner's in-person testimony because of the allegedly different accounts of his injury introduced into the record. The Court finds the different descriptions are variant descriptions of the same mechanism of injury.

8

Court now considers whether he established entitlement to temporary disability benefits. During the Expedited Hearing, Mr. Buckner testified Dr. Mazza took him off work for his back injury on July 23, 2015,[11] and he stayed out of work two weeks. Applying that testimony literally, the Court finds Mr. Buckner returned to work on August 5, 2015. Eaton's records indicate Mr. Buckner worked until August 20, 2015, when Dr. Mazza again removed him from work due to his back and leg pain and Eaton placed him under its employer-funded short-term disability plan. (Ex. 4; Ex. 6 at 1.) Although Mr. Buckner remained on short-term disability until January 31, 2016 (Ex. 6 at 1), Dr. Hodges placed him at maximum medical improvement on December 31, 2015. (Ex. 3 at 20.)

An injured worker is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Temporary partial disability benefits are available when the temporary disability is not total. *Id.*; *see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* (citing *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)).

The medical records admitted into evidence at the Expedited Hearing contain documentation indicating either Dr. Mazza or Dr. Hodges removed Mr. Buckner from work or placed him under restrictions that Eaton did not accommodate[12] from July 23, 2015, to August 5, 2015, and from August 21, 2015, to December 31, 2015. (Ex. 1 at 1, 3-5, 7-10; Ex. 3 at 8, 12, 15.) In consideration of the above documentation, the Court finds that, at a hearing on the merits, Mr. Buckner will likely prevail in establishing his entitlement to twenty-one weeks of temporary disability benefits for the time he missed from work during dates described above.

The Wage Statement introduced into evidence indicates Mr. Buckner earned $49,960.09 during the fifty weeks preceding his date of injury, for an average weekly wage of $999.20. (Ex. 5.) Accordingly, Mr. Buckner's weekly compensation rate is $666.14. Based on the above, the Court awards Mr. Buckner twenty-one weeks of

---

[11] Dr. Mazza's July 23, 2015, office note indicates he gave Mr. Buckner a "note for work." (Ex. 1 at 1.)

[12] The Court considers the fact Eaton placed Mr. Buckner on short-term disability as an indication it could not accommodate the restrictions placed on him due to his spinal injury. Also, none of the three Eaton management employees who testified during the Expedited Hearing claimed that Eaton offered Mr. Buckner work within his restrictions.

temporary disability benefits, for a total of $13,988.94.

Tennessee Code Annotated section 50-6-128 (2015) provides for a penalty if an employer "knowingly, willfully, and intentionally" causes the filing of a compensable claim under health insurance and disability coverage. The statute also prohibits an employer from recovering any non-workers' compensation benefits paid under the above-described circumstances if the claim is ultimately determined to be compensable.

Mr. Buckner's uncertainty about the cause of his back pain when he first reported it to Eaton and the resultant issue over timely notice that arose mitigate against a finding of the willful and intentional avoidance of the payment of workers' compensation benefits required to invoke the remedies set forth in section 50-6-128. Accordingly, the Court finds Eaton is entitled to reimbursement of the short-term disability benefits it paid Mr. Buckner through December 31, 2015.

*Medical Benefits*

The basic benefit afforded an injured employee under the Workers' Compensation Law is access to an authorized physician for free medical care of a compensable injury. Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). In this claim, Mr. Buckner did not receive medical care under workers' compensation because he did not initially report his back pain as related to a work injury. Later, when he reported the injury as work-related, Eaton denied the claim because it believed he provided untimely notice.

In *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015), the Workers' Compensation Appeals Board held that an employer who elects to deny a claim runs the risk of bearing responsibility for medical benefits obtained from a medical provider of the employee's choice. While Eaton denied the compensability of Mr. Buckner's claim in good faith, the Court ultimately decided that Eaton's denial of benefits was contrary to Tennessee law. The decision forced Mr. Buckner to obtain medical treatment of his serious spinal injury under the health coverage provided him as an Eaton employee. He selected treatment from Dr. Mazza and, ultimately, from Dr. Hodges. In view of the above, the Court finds that Mr. Buckner may select Dr. Mazza or Dr. Hodges as the authorized treating physician for future treatment of his compensable injury.

As for the charges Mr. Buckner incurred for treatment of his compensable injury, either he and/or the treating providers shall submit proper documentation of said charges to Eaton for payment in due course. Upon presentment of proper documentation, Eaton or its administrator shall reimburse Mr. Buckner for any out-of-pocket expense he incurred for treatment of his compensable injury.

10

**IT IS, THEREFORE, ORDERED** as follows:

1. Eaton and/or its administrator shall provide Mr. Buckner medical benefits by promptly authorizing, at Mr. Buckner's selection, Dr. Mazza or Dr. Hodges to provide future reasonable and necessary treatment of his compensable injury. Mr. Buckner and/or the treating providers shall submit charges for treatment of Mr. Buckner's compensable injury to Eaton or its administrator for payment in due course. Upon presentment of proper documentation, Eaton or its administrator shall reimburse Mr. Buckner for an out-of-pocket expenses he incurred for treatment of his compensable injury.

2. Eaton and/or its administrator shall pay Mr. Buckner temporary disability benefits at the weekly rate of $666.14 from July 23, 2015, to August 5, 2015, and from August 21, 2015, until December 31, 2015, totaling $13,988.94. Eaton may reduce the amount it pays Mr. Buckner in temporary disability benefits by the amount of short-term disability benefits it paid Mr. Buckner between the above-described time periods.

3. This matter is set for an Initial (Scheduling) Hearing on November 21, 2016, at 10:00 a.m. Eastern Time. The parties shall call in to 855-747-1721 (toll-free) or 615-741-3061 to participate.

**ENTERED this the 23d day of September, 2016.**

_____
**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-741-3061 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order Denying to appeal the decision to the Workers' Compensation Appeals Board. To file a

11

Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement

12

summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Medical records of Dr. Gerard K. Mazza;
2. Medical records of Cleveland Imaging;
3. Medical records of Chattanooga Orthopedic Group/Dr. Scott Hodges;
4. First Report of Work Injury or Illness (C20);
5. Wage Statement (C41);
6. Short Term Disability documentation;
7. Job Description;
8. Letter from Matthew Coleman to Sedgwick Claims Management Services, Inc.; and
9. Eaton Email Safety Form.

Technical record:[13]

1. Petition for Benefit Determination, filed April 26, 2016;
2. Dispute Certification Notice, filed May 26, 2016;
3. Request for Expedited Hearing, filed July 15, 2016;
4. Affidavit of Douglas A. Buckner, filed August 4, 2016.

---

[13] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23d day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Matthew Coleman, Attorney | | | X | MColeman@loganthompsonlaw.com |
| M. Reed Martz, Attorney | | | X | reed@freelandmartz.com |

Penny Shrum w/permission JD

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

14